UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MELVIN GATEWOOD,

             Plaintiff,                              Hon. Richard Alan Enslen

v.                                                  Case No. 1:04 CV 594

LARRY McMILLAN, et al.,

             Defendants.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants Burt, McMillan and Caruso's Rule 12(b) Motion for Dismissal and Rule 56(b) Motion for Summary Judgment. (Dkt. #11). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for dismissal or summary judgment, the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.


## I.        BACKGROUND

        The Michigan Department of Corrections (MDOC) offers group religious services for members of recognized religious groups. *See* Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ M (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ K (effective May 24, 2004). A prisoner who practices a faith other than one of those formally recognized by the MDOC, and who wishes to participate in group worship services, may request formal recognition of his particular religious

group.  *See* Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ DD (effective May 1, 2001); Mich. Dep't

of Corr., Policy Directive 05.03.150, ¶ M (effective May 24, 2004).

    According to Plaintiff, he is a member of the Apolstolic faith.  (Dkt. #1).  While the

MDOC recognizes several distinct religious groups, it does not formally recognize (for purposes of

conducting group worship services) the Apolstolic faith.  Plaintiff alleges that on December 22, 2002,

he submitted a request to prison officials seeking authority to hold separate group worship services for

adherents of the Apolstolic faith.  (Dkt. #18).  On June 26, 2003, Defendant Caruso denied Plaintiff's

request.  (Dkt. #12, Caruso Affidavit, Exhibit).  This determination did not prevent Plaintiff from

practicing his religion, it simply prevented him from participating in group worship services with other

members of his particular religious group.   As Defendant Caruso stated in her decision denying

Plaintiff's request:

> The Apostolic Church will not be recognized as a new faith group.  They
> will not be accommodated with time and space for separate group
> religious services.  Followers of the Apostolic Church may meet their
> group worship needs by attending existing group services for Protestant
> Christians.[1]   They may receive literature which is specific to their
> denominational group as allowed by PD 05.03.118.  They may receive
> clergy visits as allowed by PD 05.03.140.  They may receive Outreach
> Volunteer visits as allowed by PD 03.02.110.  They may purchase and
> possess religious items that are approved for Protestant Christians.

*Id.*

    Plaintiff initiated the present action, against Defendants Caruso, McMillan, and Burt,

seeking injunctive relief on the ground that by denying his request for formal recognition of the

Apostolic faith, Defendants violated his First Amendment right to freely practice his religion.

---

[1]  As part of its review of Plaintiff's request, the MDOC's Chaplaincy Advisory Council determined that "The Apostolic Church is a denominational group, or a subgroup within the larger group called Protestant Christianity."  *Id.*

Defendants Burt and McMillan have moved for dismissal of Plaintiff's claims and Defendant Caruso has moved for summary judgment.  As detailed below, the Court concludes that Defendants' motion should be granted and Plaintiff's action dismissed.

## STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in Plaintiff's favor.  *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000).  To survive a motion to dismiss, Plaintiff's complaint must allege facts, which if proved, would entitle him to relief.  *See Helfrich v. PNC Bank*, 267 F.3d 477, 480-81 (6th Cir. 2001) (citations omitted).

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits.  *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996); *Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994).  The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion."  *Matsushita Electric*

*Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997). Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

**I.**          **Plaintiff has Failed to Exhaust his Claims Against Defendants Burt and McMillan**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). The exhaustion requirement is mandatory and applies to all actions "brought with respect to prison conditions," regardless of the wrong alleged or the type of relief sought.

*Id.*  The district court is obligated to sua sponte enforce the exhaustion requirement.  *See Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).

To satisfy the exhaustion requirement, the prisoner must allege and demonstrate that he has exhausted all available administrative remedies.  Accordingly, the prisoner should attach to his § 1983 complaint the administrative decision resolving his complaint, if such decision is available.  *Id.* In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been properly exhausted.  *See Knuckles-El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).

The prisoner must also specifically identify in his grievance the particular defendant(s) against whom his action is asserted, thus enabling the prison system to address the matter in the first instance.  *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *VanDiver v. Martin*, 2002 WL 31166925 at *2 (6th Cir., Sep. 27, 2002) ("the issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific individuals mentioned in his grievance").  The Sixth Circuit recently clarified this concept, holding that "for a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process."  *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003).

The Michigan Department of Corrections (MDOC) provides a three-step grievance process pursuant to which inmates may assert their complaints.  *See* Mich. Dep't of Corr., Policy Directive 03.02.130, ¶ E (inmates may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement").  Thus, the claims asserted by Plaintiff in the present action were grievable under MDOC policy.

As previously noted, to properly exhaust a claim against a particular Defendant, Plaintiff must assert his claim at "Step I of the grievance process." Plaintiff submitted two grievances regarding this matter. However, neither of his Step I grievances allege any wrongdoing or misconduct on the part of Defendant Burt or McMillan. Accordingly, the Court recommends that Plaintiff's claims against Defendants Burt and McMillan be dismissed for failure to exhaust available administrative remedies.

**II.        Plaintiff has Failed to State a Claim Against Defendants Burt and McMillan**

The only allegations against Defendants Burt and McMillan articulated in Plaintiff's complaint are that Defendants improperly denied his grievances. Specifically, Plaintiff asserts that Defendant McMillan denied his Step I grievance and that Defendant Burt denied his Step II grievance.

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension"). Accordingly, the Court recommends that Plaintiff's claims against Defendants Burt and McMillan be denied for failure to state a claim upon which relief may be granted.

**III.**             **Defendant Caruso is Entitled to Summary Judgment**

Plaintiff asserts that Defendant Caruso, by denying his request for separate group worship services for members of the Apolstolic faith, violated his First Amendment right to freely practice his religion.  As discussed below, the Court concludes that because Defendant Caruso's decision was motivated by legitimate penological objectives, she is entitled to summary judgment.

It is well recognized that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *see also, Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the

regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents, however, a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1.  there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2.  whether there are alternative means of exercising the right that remain open to prison inmates;

3.  the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.  whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.*

MDOC policy provides that prisoners may practice their religion, so long as such practice does not interfere with the order and security of the facility. *See* Mich. Dep't of Corr., Policy Directive 05.03.150 (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150 (effective May 24, 2004). Pursuant to this policy, a Chaplaincy Advisory Council (CAC), "comprised of representatives of various faiths and denominations," serves "in an advisory capacity to the Department regarding religious policy and programming." *See* Mich. Dep't of Corr., Policy Directive 05.03.150 ¶ F (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150 ¶ I (effective May 24, 2004).

As previously noted, prisoners may request formal recognition of a religious group by submitting a written request to the Warden or Regional Administrator. *See* Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ DD (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ M (effective May 24, 2004). All such requests are forwarded to the Correctional Facilities Administration (CFA) Deputy Director, who "shall make the final decision as to whether the religious group will be granted recognition by the Department." *See* Mich. Dep't of Corr., Policy Directive 05.03.150, ¶¶ DD-EE (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150, ¶¶ M-N (effective May 24, 2004). Before making this determination, the CFA Deputy Director may first present the request to the CAC for review. *See* Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ DD (effective May 1, 2001); Mich. Dep't of Corr., Policy Directive 05.03.150, ¶ M (effective May 24, 2004).

At the time Plaintiff submitted his request for formal recognition of the Apolstolic church, Defendant Caruso was serving as the CFA Deputy Director. (Dkt. #12, Caruso Affidavit at ¶ 14). In accordance with MDOC policy, Defendant Caruso forwarded Plaintiff's request to the CAC for review. *Id.* The CAC concluded that "the Apolstolic Church is a denominational group, or a subgroup within the larger group called 'Protestant Christianity.'" *Id.* at ¶ 15. Thus, the CAC recommended that

"members of the Apolstolic Church be allowed to worship with other Protestants." *Id.* Due to "limited staff, space, resources, and security concerns," Defendant Caruso adopted the CAC's recommendation and denied Plaintiff's request to allow members of the Apolstolic Church to participate in separate group worship services. *Id.* at ¶¶ 13-16. Plaintiff has presented no evidence impugning Defendant Caruso's stated motivations for denying Plaintiff's request.

It is well recognized that "prison administrators, like most government officials, have limited resources to provide the services they are called upon to administer." *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 861 (5th Cir. 2004) (citation omitted); *see also, Spies v. Voinovich*, 173 F.3d 398, 404-05 (6th Cir. 1999) (recognizing that a prisoner's right to freely practice his religion is not absolute and may be curtailed due to limited prison resources). The Court concludes, therefore, that there exists a "valid, rational connection" between Defendant Caruso's decision in this matter and the legitimate interests on which her decision was premised.

As for the remaining *Turner* factors, such weigh in favor of Defendant. Permitting every conceivable religious group or faith to conduct group worship services would place an unreasonable burden on the prison system's limited resources. Moreover, as Defendant Caruso asserts in her affidavit, pursuant to MDOC policy Plaintiff is permitted: (1) to receive literature regarding the Apolstolic faith, (2) to receive clergy and outreach volunteer visits, and (3) to possess approved religious items. (Dkt. #12, Caruso Affidavit at ¶ 16). Plaintiff has submitted no evidence refuting these assertions. The Court concludes, therefore, that Defendant Caruso's decision denying Plaintiff's request was based upon legitimate penological considerations and, therefore, does not violate Plaintiff's First Amendment right to freely practice his religion.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants Burt, McMillan and Caruso's Rule 12(b) Motion for Dismissal and Rule 56(b) Motion for Summary Judgment</u>, (dkt. #11), be **granted** and Plaintiff's action dismissed.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  July 25, 2005

  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge